IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CESAR MARQUEZ,

        Plaintiff,

v.                                      Case No.  25-2547-JWB

GRANT DREILING, et al.,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant Dreiling's motion to dismiss.  (Doc. 17.)  The motion has been fully briefed and is ripe for decision.  (Docs. 18, 19, 25.)  The motion is GRANTED for the reasons stated herein.

## I.    Facts

Plaintiff is the father of two children who attend school in the Shawnee Mission School District ("SMSD"), USD 512, in Johnson County, Kansas.  The children also have individual education plans ("IEPs").  One of the children, Z.D., is involved in cross-country running.  On August 29, 2025, Plaintiff attended Z.D.'s cross-country meet.  Plaintiff remained in the designated public spectator area at all times.  (Doc. 1 ¶ 14.)  During the race, Plaintiff encouraged his son by saying "Faster," "Close the gap," "You got this," "Go [Z], Go," and "Win!"  (*Id.* ¶ 15.)  His cheers did not contain profanity or threats and were consistent with other parents' behavior.  Z.D. won the race.  As other runners finished behind Z.D., Plaintiff told the second-place finisher: "Better run faster."  (*Id.* ¶ 17.)

As Z.D. finished, Plaintiff shouted "That's right, Coach Fred!"  (*Id.* ¶ 18.)  After the race was over, Coach Frederick Douglas called out to Plaintiff: "Cesar, what was that all about?"  (*Id.*

¶ 22.) Plaintiff alleges that the two men approached each other but remained at arm's length and Plaintiff responded as follows: "You said he'd get hurt and shouldn't train the way I wanted him to train. Well, look at him now." (*Id*. ¶ 24.) Coach Douglas said, "Was that really necessary?" (*Id.* ¶ 25.) Plaintiff left the area after this discussion and he did not respond to the coach's question.

On September 2, the school's athletic director left Plaintiff a voicemail requesting a meeting regarding the "incidents" that occurred. (*Id.* ¶ 26.) Plaintiff responded by sending a detailed account of Z.D.'s record and achievements and also acknowledged the August 29 incident, describing the incident as a "brief physical contact with Coach Douglas (described as conversational, not aggressive) and the comment to another athlete." (*Id.* ¶ 28.) Plaintiff requested "accommodation for work conflicts and offered video conferencing options," but Defendant Dreiling and the school required an in-person meeting. (*Id.* ¶ 31.)

On September 5, Defendant Dreiling suspended Plaintiff from attending cross-country events. Dreiling stated that the basis for excluding Plaintiff from these events was due to "physical contact with staff members" and "communication with athletes in a non-sportsmanlike manner." (*Id.* ¶ 33.) Dreiling told Plaintiff that he would incur a district-wide no trespass ban if he did not attend the meeting. On September 7, Dreiling issued a district-wide no trespass order. The order stated that Plaintiff could not be on any SMSD "campus or property at any time" and if Plaintiff needed to be on the property, he was to first schedule an appointment by telephone. (Doc. 5.)[1] Plaintiff alleges that this ban prevented him from attending his children's IEP meetings on September 22 and 26, 2025. Plaintiff also could not attend multiple cross-country events. On September 24, 2025, the trespass ban was amended to only prohibit Plaintiff from attending the cross-country practices and meets for the remainder of the Fall 2025 season. (Doc. 14-1.)

---

[1] The court may take judicial notice of the trespass order as it was incorporated by reference in the complaint. The trespass order was attached to a prior filing submitted by Plaintiff.

Plaintiff brings claims against Dreiling and Defendant SMSD under 42 U.S.C. § 1983 for alleged violations of his civil rights.[2]  Plaintiff asserts that Defendants violated his First Amendment rights and his procedural and substantive due process rights under the Fourteenth Amendment.  He also alleges that his rights to equal protection of the laws have been violated by Defendants. Defendant Dreiling moves to dismiss on the basis that Plaintiff's complaint fails to state a claim against him and that he is entitled to qualified immunity.[3]

More than two months after the motion to dismiss was briefed, Plaintiff moved to file a supplemental brief.  (Doc. 37.)  Plaintiff's supplemental brief seeks to bring to the court's attention SMSD's substantially revised policy regarding complaints.  According to Plaintiff, this policy includes defined procedures that would allow parents to file a complaint about policy violations and provide an opportunity to be heard.  (*Id.* at 2.)  Plaintiff contends that the court should consider his supplemental motion as it raises new evidence that was not available and "supports an inference that Defendants were on notice . . . that their practice of banning parents from school property implicated First Amendment protections and required procedural safeguards."  (*Id.*) The brief includes two exhibits, a document which appears to be created by Plaintiff explaining the changes in the policy and a timeline created by Plaintiff.  (Doc. 37-1 and 37-2.)  Defendant opposes the motion.  (Doc. 39.)  After review, the court denies Plaintiff's motion to supplement the briefing. At issue on the motion to dismiss is the procedures that were in effect at the time of the conduct and not procedures that were adopted after Plaintiff's trespass ban.  Further, as this is a motion to dismiss, the court cannot consider any exhibits that were not attached to the complaint or

---

[2] Plaintiff voluntarily dismissed Counts VI and VII which were brought on behalf of his minor children.  (Doc. 46.)
[3] Plaintiff's response brief also addresses his claims against Defendant SMSD but that Defendant did not move for dismissal.  (Doc. 19 at 13.)  Therefore, the court does not address those claims.

incorporated into the complaint by reference.    Neither of these exhibits attached to the supplemental brief were attached to the complaint.  Therefore, the court may not consider them.

## II.    Standard

Pro Se Standard.  Because Plaintiff is proceeding pro se, the court is to liberally construe his filings.[4]  *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).  However, liberally construing filings does not mean supplying additional factual allegations or constructing a legal theory on Plaintiff's behalf.  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

Motion to Dismiss.  In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff.  *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).  Conclusory allegations, however, have no bearing upon the court's consideration.  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

Qualified Immunity.  Defendant Dreiling also moves to dismiss on the basis of qualified immunity.  "Individual defendants named in a § 1983 action may raise a defense of qualified immunity."  *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013).  Qualified immunity "shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law."  *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted).  When the defense of qualified immunity is asserted, a plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2)

---

[4] The court notes that Plaintiff was represented by counsel through the briefing on the motion to dismiss.  However, the court recognizes that Plaintiff is now proceeding pro se.

4

that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460.

## III.    Analysis

### A.  Subject Matter Jurisdiction

Defendant Dreiling argues that this court lacks subject matter jurisdiction because Plaintiff does not have Article III standing and his claims are moot.  With respect to standing, Defendant asserts that Plaintiff is not identified as the biological or adoptive father of the two minors in the school records.  Defendant attaches an affidavit in support of this assertion.  (Doc. 18-1.)  In response, Plaintiff argues that other school records show he is the father.  (Doc. 19 at 11, n. 1.)  At this stage of the proceedings, the court declines to consider the affidavit.  The complaint alleges that Plaintiff is the children's father and the court will take this allegation as true.

Next, Defendant argues that Plaintiff's claim is moot as he sought injunctive relief to attend cross country meets and the season is now over.  Although Plaintiff does seek this relief which is moot, Plaintiff's requested injunctive relief is broad and also asks for future procedural safeguards for Plaintiff.  Additionally, Plaintiff seeks compensatory damages for his claims.  Therefore, although certain aspects of his requested injunctive relief are moot, this matter is not moot. *Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019) (discussing that the court must decide whether a case is moot as to "each form of relief sought.")

### B.  First Amendment Claims

Plaintiff asserts that Defendant Dreiling violated his First Amendment rights by classifying his constitutionally protected speech as a disruption, by retaliating against him for exercising his rights, and by engaging in viewpoint discrimination.  Defendant moves for dismissal on the basis he is entitled to qualified immunity.

5

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Valverde by and through Padilla v. Dodge*, 967 F.3d 1049, 1058 (10th Cir. 2020) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).  Qualified immunity is designed to protect "all but the plainly incompetent or those who knowingly violate the law." *Soza v. Demsich*, 13 F.4th 1094, 1099 (10th Cir. 2021) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).  To overcome a qualified immunity defense, Plaintiff bears the burden to demonstrate on the facts alleged: "(1) that the official violated a statutory or constitutional right; and (2) that the right was 'clearly established' at the time of the challenged conduct." *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015).  This court has discretion to decide which prong to address first. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

For purposes of qualified immunity, the law is clearly established if Supreme Court or Tenth Circuit precedent, or the weight of authority from other circuits, would put a reasonable official on notice that he was violating the right at issue. *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1210 (10th Cir. 2017).  While there need not be a case exactly on point, existing caselaw must have placed the constitutional issue "beyond debate." *Soza v. Demsich*, 13 F.4th 1094, 1099 (10th Cir. 2021) (quoting *Mullenix*, 577 U.S. at 12).  In other words, a "clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11.  Courts are not to define "clearly established law at a high level of generality."  *Id.* at 12. "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id*.

Here, in response to the motion, Plaintiff asserts that two cases from this district show that the First Amendment rights at issue were clearly established. To show that a right is clearly established, however, Plaintiff must point to Supreme Court or Tenth Circuit precedent, or the weight of authority from other circuits, that would put a reasonable official on notice that he was violating Plaintiff's rights. *See Carabajal*, 847 F.3d at 1210. Plaintiff has not done so. Nevertheless, the cases Plaintiff cited would not have put Defendant on notice that he was violating Plaintiff's First Amendment rights. The court will turn to those cases.

In *Czaplinski v. Ballard*, the undersigned judge denied a motion to dismiss on the basis of qualified immunity. No. 25-2057-JWB, 2025 WL 2986832 (D. Kan. Oct. 23, 2025). In *Czaplinski*, the minor student was bullied by other students on several occasions, including an alleged sexual assault. The plaintiff father made several calls to the Kansas State Department of Education, the Board of Education, and the school to report the bullying and voice his concerns that the school was not taking the minor student's safety seriously. The plaintiff also filed a Title IX grievance on the minor student's behalf. The school scheduled a meeting that the plaintiff could not attend due to a doctor's appointment, but his wife attended. At that meeting, school personnel "falsely alleged" that the plaintiff had harassed district personnel during the calls and an in-person visit. *Id.* *2. The school personnel also informed the plaintiff's wife that the official could sue the plaintiff for harassment. The plaintiff allegedly never went to the school in person. The defendant school official banned the plaintiff from school property. The ban required the plaintiff to obtain permission from school officials prior to coming on school property. The plaintiff filed a § 1983 complaint alleging that the defendants violated his First Amendment right to free speech by retaliating against him after his complaints. The court held that the plaintiff had sufficiently alleged a violation and it was clearly established that criticism of the government is a

constitutionally protected area of free discussion. *Id.* *3, 5. Further, the school officials were on notice that retaliating against the exercise of free speech including threatening legal harassment and denying a benefit to a person were infringements of that right. *Id.* *5.

In *Schmidt v. Huff*, the plaintiff was a parent and later became a member of the District Educational Services Advisory Committee. No. 25-CV-2081-EFM-GEB, 2025 WL 2374153 (D. Kan. Aug. 14, 2025). The plaintiff would frequently speak at school board meetings during the designated time when the public could speak. During this time, the plaintiff would read from books available in the school's library for the purpose of demonstrating the plaintiff's belief that there were inappropriate books available for minors. On one occasion, prior to her speaking, the defendant board member criticized her, stated that they all knew what she was going to say, that she was trying to shock everyone, and she was "costing this community valuable time, effort and unfortunately valuable people who didn't cause the issue but have been drug through the mud by this continued and disingenuous rhetoric." *Id.* *2. During her speech, which was allotted three minutes, the plaintiff's microphone was muted until the last twenty seconds. On another occasion, the plaintiff was at the school to make snack bags for the wrestling team. While there, she took pictures of posters in a classroom that had a teacher's name on it. The posters were from a room that was used for the Gay Straight Alliance Club. *Id.* The plaintiff then sent those pictures to a Tik Tok account which posted pictures of "individuals or organizations that often express progressive or liberal views." *Id.* *3. The pictures were posted to the account with the caption of a "School in Gardner, Kansas." *Id.* The defendant superintendent confronted the plaintiff and told her that her actions disrupted the school day. The defendant later told the plaintiff that she had violated several policies and was not welcome on the campus without permission. The plaintiff brought claims of First Amendment retaliation and viewpoint discrimination against several

defendants. The court denied the motion to dismiss holding that a "reasonably competent public official should necessarily know that prefacing a speaker's speech with a pointed attack on her opinions and then muting her microphone throughout her designated speaking time is differential treatment amounting to a First Amendment violation." *Id.* *6. With respect to the trespass ban, the court held that it was clear that the plaintiff was being punished for not only her speech but the speech of the Tik Tok user and that the posting was an insufficient reason to strip the plaintiff of her First Amendment rights. *Id.* *8.

Contrary to Plaintiff's assertions, *Czaplinski* and *Schmidt* do not involve similar claims that would put Defendant on notice that he was violating Plaintiff's First Amendment rights. *Schmidt* involves the silencing of a plaintiff's right to speak at a public forum which is not applicable here. Although the plaintiff in *Schmidt* was also prevented from going on school grounds, this action was taken in response to the plaintiff's taking pictures in the school and posting them online. Such conduct is not similar to the allegations in this case.

*Czaplinski* involved a parent who repeatedly criticized the school for failing to protect his child. The plaintiff father's actions in that case are not similar to the matter here, either. In that case, the plaintiff father was criticizing the school's failure to protect his child and he also made a Title IX complaint. Here, although Plaintiff disagreed with the coach's position, he does not allege that he complained to the school about the coach and that this was the basis for the violation of his rights. Rather, Plaintiff made an arguably inappropriate and unsportsmanlike comment to another **child** during a race. Plaintiff then had some sort of physical contact with the coach while telling him that Plaintiff's own coaching methods are the reason for his son's success.[5] This speech can

---

[5] Plaintiff's allegations are somewhat contradictory. Plaintiff alleges that he stood arm's length from the coach during the discussion but also acknowledges that he had a physical interaction with the coach while not putting forth any facts regarding that physical interaction. (Doc. 1 ¶¶ 23, 28.) The court accepts Plaintiff's admission of "brief physical contact with Coach Douglas" for purposes of evaluating this motion. (*Id.* ¶ 28.)

hardly be categorized as a criticism of a school official. These actions are not similar to the plaintiff in *Czaplinski*.

Plaintiff has failed to point to any authority which would put Defendant on notice that his conduct in preventing Plaintiff from going on school property after these incidents at the cross-country meet violated his First Amendment rights. *See Hirt v. Unified Sch. Dist. No. 287*, No. 2:17-CV-02279-HLT, 2019 WL 1866321, at *18 (D. Kan. Apr. 24, 2019), *aff'd sub nom. Clark v. Unified Sch. Dist. No. 287*, 822 F. App'x 706 (10th Cir. 2020) (granting qualified immunity to school officials who banned the plaintiff from school property and citing cases in support) (citing *Johnson v. Perry*, 859 F.3d 156, 175 (2d Cir. 2017) (granting qualified immunity where plaintiff failed to point to any cases "in which a parent has been held to have a First Amendment right to unlimited access to school property."))

Therefore, Defendant is entitled to qualified immunity.

### C. Procedural Due Process

Plaintiff also asserts that Defendant violated his procedural due process rights by imposing the trespass order without specific notice, providing a hearing, making factual determinations, and the lack of a neutral decisionmaker. Here, Plaintiff has alleged that Defendant contacted him and asked for an in-person meeting that Plaintiff would not attend. Plaintiff was told that the meeting was to address his unsportsmanlike conduct and the interaction with the coach. Plaintiff offered to attend a virtual meeting but Defendant insisted on an in-person meeting. Defendant also informed Plaintiff that he would impose the trespass order if Plaintiff did not attend the meeting. (Doc. 1 ¶ 34.) Plaintiff did not meet with Defendant and Defendant then imposed the trespass order. Plaintiff asserts that the order was issued pursuant to a deficient process and that it prevented

10

him from attending his children's sporting events and IEPs.  Plaintiff, however, does not allege that he sought permission to attend the IEPs either in person or remotely.

Defendant again moves for dismissal on the basis of qualified immunity.  In response, Plaintiff cites to *Schmidt* in support of his claim that the right was clearly established.  (Doc. 19 at 8.)  But *Schmidt* is not helpful to Plaintiff here.  *Schmidt* was not a Tenth Circuit opinion nor were the facts in *Schmidt* similar.  To show a violation of procedural due process, Plaintiff must first establish deprivation of an interest in "life, liberty, or property."  *Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012).  Here, Plaintiff's alleged liberty interests are accessing school property, his reputation, and attending IEP meetings.  (Doc. 19 at 8.)  Plaintiff, however, fails to cite any authority in support of his assertion that these are protected liberty interests.  *See Hirt*, 2019 WL 1866321 *10 (holding that there was no protected interest in entering school property and granting summary judgment on the due process claims); *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1184 (10th Cir. 2016) (damage to reputation alone was not sufficient to establish a protected liberty interest).

Further, even if Plaintiff was able to allege a deprivation of a liberty interest, Plaintiff has failed to meet his burden to show that the imposition of the trespass order violated his procedural due process rights.  Plaintiff's allegations make clear that Plaintiff was aware of the incidents at issue and that Defendant wanted to meet with him in person to discuss these incidents.  Plaintiff did not meet with Defendant and the trespass order was imposed.  Even assuming that there was a violation of his due process rights, Plaintiff fails to cite to any authority that would put Defendant on notice that he was violating Plaintiff's due process rights by imposing the order given the circumstances alleged.  *See Hirt*, 2019 WL 1866321 *10.

Therefore, Defendant Dreiling is entitled to qualified immunity.

11

### D. Substantive Due Process

With respect to Plaintiff's claim that his right to substantive due process was violated, Plaintiff has failed to allege a constitutional violation. Plaintiff's complaint alleges that Defendants violated his fundamental right to direct the upbringing and education of his children by preventing him from attending his children's educational meetings and extra circular activities. (Doc. 1 at 16.) In opposition to the motion dismiss, Plaintiff contends that he has sufficiently stated a liberty interest and quotes the *Schmidt* case for the proposition that "The mere fact that [a parent] must obtain permission when other similarly situated members of the public do not is a deprivation of liberty. Defendants cannot strip Plaintiff's rights down to privileges without just cause." (Doc. 19 at 8) (indicating that the quote was obtained from *Schmidt*, 2025 WL 2374153 *8.) This quote is not contained in the *Schmidt* opinion.[6] Further, the plaintiff in *Schmidt* did not assert a substantive due process claim.

Plaintiff has failed to plausibly allege facts showing that the trespass order violates his right to direct the upbringing and education of his children. Although a parent has the right to direct a child's education, it is not entirely unlimited. *See Swanson v. Guthrie Indep. Sch. Dist. No. I-L*, 135 F.3d 694, 699 (10th Cir. 1998). In the public school setting, "parents simply do not have a constitutional right to control each and every aspect of their children's education and oust the state's authority over that subject." *Id.* Plaintiff fails to cite any authority to establish that Defendant's conduct violated his right to direct the upbringing and education of his child by restricting his access to school property after the incidents at the cross-country meets. Further, he fails to cite any authority that would show that this right was clearly established.

---

[6] Typically, the court would require Plaintiff to show cause why he should not be subject to sanctions for including a false quote in his brief. *See* D. Kan. Standing Order 26-01. However, Plaintiff was represented by counsel at the time the brief was filed and is now proceeding pro se. Therefore, the court declines to enter a show cause order.

Therefore, Defendant is entitled to qualified immunity on this claim.

### E.  Equal Protection

Plaintiff's remaining claim against Defendant Dreiling is one for a violation of his right to equal protection.  To state a plausible equal protection violation, Plaintiff must allege facts which show that he was treated differently than others "*who are in all relevant respects alike.*"  *Taylor v. Roswell Ind. Sch. Dist.*, 713 F.3d 25, 54 (10th Cir. 2013) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). "Equal protection jurisprudence has traditionally been concerned with governmental action that disproportionately burdens certain classes of citizens." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215–16 (10th Cir. 2011).  Here, Plaintiff does not allege membership in a protected class.  Rather, Plaintiff argues that he was treated differently by Defendants and that other "parents and attendees" had the right to "express their views on the same topics and subjects as the plaintiff while denying that right to the plaintiff."  (Doc. 1 at 20.)

Therefore, Plaintiff's equal protection claim is a "class-of-one" equal protection claim.  *See Kansas Penn Gaming, LLC*, 656 F.3d at 1216.  To succeed under a class-of-one theory, Plaintiff must show that "others, 'similarly situated in every material respect' were treated differently." *Id.* (quoting *Jicarilla Apache Nation v. Rio Arriba Cnty*, 440 F.3d 1202, 1210 (10th Cir. 2006)).  If his allegations sufficiently plead that he was treated differently than others who were similarly situated in every material respect, then he must show that the "difference in treatment was without rational basis, that is, the government action was irrational and abusive, [ ] and wholly unrelated to any legitimate state activity." *Id.*

Plaintiff's allegations fail to plead that he was treated differently than others who were similarly situated in every material respect.  Plaintiff makes a conclusory allegation that other parents "regularly made similar comments to athletes without facing disciplinary action."  (Doc. 1

¶ 17.)  Plaintiff, however, fails to allege the nature of the comments made to athletes, the location, and the identity of the speakers.  Therefore, he has failed to state a claim of a violation of the Equal Protection clause.

**IV.     Conclusion**

Defendant Dreiling's motion to dismiss (Doc. 17) is GRANTED.  Plaintiff's motion for leave to file a supplemental brief (Doc. 37) is DENIED.

IT IS SO ORDERED.  Dated this 29th day of June 2026.

s/ John Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE